Casey, Oh. J.,
dissenting:
Tbe petition alleges, that for many years prior to October, 1862, tbe claimant was tbe owner of a sugar plantation in the1 parish of Assumption, in the State of Louisiana, and where be resided himself. That, being in feeble health, be, upon tbe advice of bis physician, and to procure a change of air, went to Tesas, and remained there until November, 1865. That be left bis plantation in Louisiana in charge of bis agent, who remained there and upon the place; and that, notwithstanding, tbe United States illegally, violently, and forcibly took possession of bis plantation, against bis consent and that of his agent, whom they dispossessed under the false and illegal pretext that tbe property was abandoned by tbe owner. He further alleges that there was personal property on bis said plantation, specially designated, amounting in tbe whole to tbe .sum of $42,508, which was destroyed or taken and carried away by tbe United States, and their agents who were put in possession and charge of tbis plantation, and claims in tbis action to recover tbe value of them.
And it is further alleged, that during tbe time tbis plantation was in tbe possession of tbe United States, as before stated, it was rented out by tbe United States, during tbe years 1864 and 1865, to persons who made large crops of sugar and molasses , and other agricultural products thereon, tbe value of which be believes to have been at least $15,000 per annum, or $30,000 in all for tbe two years; and alleges tbe legal liability to pay him tbe value of tbe. property so taken or destroyed, and tbe rent of the plantation for the time it was held. He avers bis loyalty to tbe United States, and that be never gave any aid or comfort to tbe rebellion.
Tbe defendants, by their Attorney General, move tbe court to dismiss tbis petition, because tbis court has not jurisdiction to bear and determine tbe cause of action therein set forth.' A majority of tbe court have made tbis rule absolute, and dismissed tbis petition.
*117 The only ground .of want of jurisdiction alleged was that it is taken away by the act of July 4, 1864. The first section of that act, and the only provision in it that relates to the jurisdiction of this court, is as follows: “ That the jurisdiction of the Court of Claims shall not extend to or include any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the army or navy, or any part of the army or navy, engaged in the suppression of the rebellion, from the commencement to the close thereof.”
This is a special exception to the general powers and jurisdiction of this court 5 for, as we decided, and Judge Wilmot clearly demonstrated.in the case of Grant v. The United States, (1 C.Cls. R., 41,) we had jurisdiction for compensation for property taken or destroyed by the United S tates. Eecognizing this general rule as the correct one, Congress makes a special exception “of the destruction or appropriation of, or damage to, property by the army and navy, or any part of the army and navy, engaged in the suppression of the rebellion.” Now, I admit that if the claimant had alleged that his property had been taken or destroyed by the army or navy, or any part of either, a demurrer would be sustained or a motion to dismiss made absolute; for then the want of jurisdiction would appear upon the lace of the petition. But it is a well-established principle in pleading that the plaintiff in his allegations and averments need only bring himself within the general jurisdiction of the court. A special exception must be set up, by way of plea, by the defendant. Such a special exemption by statute, where it is not contained in the enacting clause of the' same statute which confers the general jurisdiction over the subject-matter, need not be negatived in pleading. (1 T. R., 141; 8 ibid., 542; 1 B. & A., 94; Dwar. on Stat., 515.) Our jurisdiction over the subject-matter is conferred by the general enactments of February 24,1855, March 3,1863, March 12,1863, and July 2, 1864. The particular exception is contained in another and subsequent statute, and according to all rules of pleading need not be negatived by the claimant. If he, by proper averments, brings himsqlf wdthin the general powers and jurisdiction of the court, and the United States claim exemption, by reason of a special enactment, that is matter of defence, and as such must be pleaded. (Dwar. on Stat., 515.) Á declaration is a statement of facts, which in law give the plaintiff a *118 right to recover. It is defective when the proof to justify and sustain a recovery must go further than the allegations in the material circumstances, which are of the essence of the action.
Tested by these rules and principles, does it appear that we have jurisdiction? We have jurisdiction of contracts, express and implied, by the act of February 24,1855, and also' by the act of March 3, 1863. By the act of March 12, 1863, we have jurisdiction of captured property, or its proceeds. By the act of July 2, 18C4, abandoned lands and houses are to be leased, and the rents, &c., after deducting all proper expenses, are to be paid into the treasury. The owners establishing their ownership and loyalty are entitled to recover these proceeds in this court.
The claimant avers that his plantation was seized forcibly and illegally by the United States, under the pretext that it had been abandoned by him. Such abandonment he most directly and explicitly denies. To have been liable to seizure as an abandoned plantation, it must come within the enactment in the act of July 2,1864, “ the lawful owner thereof being absent therefrom, and engaged, either in arms or otherwise, in aiding or encouraging the rebellion.” This he fully negatives in his petition. He moreover alleges that his plantation after seizure was rented out by the agents of the United States, who received the proceeds. These were the treasury agents appointed under the act of March 12, 1863, and who alone were authorized, by the act of July 2,1864, to lease abandoned lands or dispose of captured property.
But it is objected that the claimant does not aver that the proceeds have been paid by this agent of the defendants into the treasury of the United States.
But,'in my opinion, it is a misapprehension to suppose that such an averment is necessary to give us jurisdiction, or such proof requisite to enable the claimant to recover. For, in the first place, the law makes it the duty of the agent to pay it over, and we must presume that he performed his duty. His failure to do so would have been embezzlement, and which, by the same act, is punishable by a fine of $5,000 and imprisonment for three years in the penitentiary. The law also required such agents to give bonds with sureties for the faithful performance of the public trust committed to them. Now, it is a well-settled rule of law, that where any duty is to be performed *119 by a person, ancl especially a public officer, the omission or neglect of which would make him guilty of a criminal offence, the law in such cases presumes that the duty was performéd, and throws the proof of the negative upon him who alleges and sets up the neglect or dereliction. (King v. Hawkins, 10 East., 216 ; Rex v. Rogers, 2 Camp., 654; 3 East., 192; 2 M. Sel., 561; 1 Chitty Pl., 253; Phil. Ev., 151.) In all such cases it is presumed that everything which the law enjoins and requires has been done until the contrary is proved. (1 B. & Aid., 463.) And those presumptions need not be pleaded. Thus, if feoffment is averred, livery of seizin need not be alleged, for that is implied. (1 Chitty Pl., 253; 8 Coke, 81 b., Bac. Ab. Pleas, 1-7; 2 Saund., 305; Steph. on Pl., 2d ed., 398.) Therefore, when it is alleged that the place was leased by a treasury agent of the United States, and that he received the proceeds, the law iniqilies that he paid them over into the treasury of the United States, and it is not necessary to aver this conclusion and implication of law.
But, in my opinion, it'is a mistake to suppose that it is neces sary to either aver or prove that the treasury agent paid over the money, in order to enable the claimant to recover. . This is not the ground of his action; but that the government, without any right or authority, took and used or sold his property; that the persons by whom it was done were the accredited officers and agents of the United States, over whom the claimant could exercise no influence or control, but who were amenable to the orders and responsible to the' defendants alone. If they have permitted their own officer or agent to steal or embezzle the proceeds of a loyal man’s property, ought he'therefore to lose it! The agent is liable to them on his bond for these proceeds, and not to the claimant. Suppose it should turn out in hliis very instance that the agent who leased these lands did not pay the money into the treasury, but kept or embezzled it. The United States defend and defeat this action, because their agent has been unfaithful and dishonest. The limitation of two years has expired. All remedy is gone. The judgment against the claimant here is a conclusive bar everywhere else, and for all time. And suppose the United States, against whom no limitation runs, hereafter siie this agent on his bond, and recover upon it these very xnoceeds, and they are then paid into the treasury. Would not an interpretation which would *120 thus defeat the object and beneficent purpose of this statute be contrary to all established rules of construction ? The law gives the action to the owner, because the United States, through its proper and legitimate officer, received the proceeds. The law gave the right to the treasury agent to receive these 'proceeds, and when they were received by him. they were as. much received by the United States as if they had been paid over to the Treasurer of the United States and by him placed in his vault. The treasury agent was, for the purpose of receiving these proceeds, the dire and only accredited agent of' the United States. Neither the Secretary of the Treasury nor the Treasurer of the United States would have had any more right to demand and receive these proceeds in the first instance-than would one of the judges of this court. They could only be demanded by and paid to the proper treasury agent. And when they were so received by him they were received by the United States, and all their legal liabilities followed.
But suppose “that after these proceeds are paid into the treasury of the United States the Treasurer or some other agent should embezzle them, or they are consumed by fire or lost by robbery. What then? Would the owner in such case have to bear the loss? Would this discharge the United States? If the neglect or crime of one agent would have that effect, I do not see why that of any other should not be followed by the same consequence. If the claimant shows that the iwoperty was taken possession of by a party duly authorized and directed by the United States, and the proceeds were received by such person, then he traces them into the legal custody of the United States. It is made the duty by law of such person to pay the proceeds over to another person, a different officer of the same government, as the custodian of all its finances. But that is. the duty of all collecting and receiving officers and agents as well as these particular agents; and when received by such collecting agents it is- as much in the possession of the United States as when covered into its treasury.
Upon what reason or principle should the loyal owner’s right of recovery depend on the payment into the treasury by the agent of the United States ? His property was taken from him forcibly, not voluntarily handed over. He had no right or means to compel the agent to perform this duty. He could not call him to account for the proceeds in any way. The law *121 forbids him to sue sucb agent for anything done under color of the laws which we are considering. He can bring no suit upon this agent’s bond, nor in any other-form, or against any other-party than the United States, and in this court.
The law has designated or prescribed the matters of fact to. be proved to authorize a recovery. And the actual payment of the money by the agent into the treasury is not among those-requirements. But after proof that his property was taken* and sold and the money received therefor by an authorized agent of the United States, it only remains to give “proof to-the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, &c., to receive-the residue of such proceeds.v There is not one word in all these acts which makes proof of payment into the treasury a condition precedent to recovery. They direct that the money, when, received by the agents, shall be paid into the treasury. But such provisions, as will be. clearly seen from the context and. the relation in which they stand, are intended to prescribe the duty and mark the liability of the agent, and not to limit, define, or regulate the rights of claimants, or the responsibility,, of the United States.
I think the averments are sufficient to sustain the jurisdiction of this court, and therefore am of opinion that this rule-should be discharged.
Loking-, J., concurred in this dissent.